IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| LISA K. BANDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:10-cv-00119 |
| | ) | Judge Nixon |
| MICHAEL J. ASTRUE, | ) | Magistrate Judge Brown |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Plaintiff Lisa K. Bandy's Motion for Judgment on the Record ("Motion") (Doc. No. 12), filed with a Memorandum in Support (Doc. No. 13). Defendant Commissioner of Social Security filed a Response in Opposition (Doc. No. 14), to which Plaintiff filed a Reply (Doc. No. 15). Magistrate Judge Brown issued a Report and Recommendation ("Report") recommending that Plaintiff's Motion be denied and the final decision of the Commissioner be affirmed. (Doc. No. 16.) Plaintiff filed Objections to the Report (Doc. No. 17) and Defendant filed a Response to Plaintiff's Objections (Doc. No. 18). Upon review of the record, the Court **ADOPTS** the Report, **DENIES** Plaintiff's Motion, and **AFFIRMS** the decision of the Commissioner.

I. BACKGROUND

*A. Factual Background*

The Court adopts the facts as stated in the Review of the Record in Magistrate Judge Brown's Report (Doc. No. 17 at 3-12).

1

*B. Procedural Background*

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on October 23, 2007, alleging disability due to scoliosis, thyroid problems, Grave's Disease, and mental impairments. (Tr. 150-52.) Plaintiff stated an amended alleged onset date of September 24, 2005, because Plaintiff had been previously denied benefits by an ALJ on September 23, 2005. (Tr. 73-81; 150-52.) Plaintiff's application was denied upon initial review, and again upon reconsideration. (Tr. 94-96, 100-01.) Plaintiff's request for a hearing before an Administrative Law Judge ("ALJ") was granted, and the hearing took place on June 25, 2009. (Tr. 36-52.) Plaintiff requested and was granted a supplemental hearing, which was held on October 27, 2009. (Tr. 25-34.) The ALJ denied Plaintiff's claim on January 1, 2010. (Tr. 54-65.) The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.

2. The claimant did not engage in substantial gainful activity during the period from her amended onset date of September 24, 2005 through her date last insured of December 31, 2006 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: lumbar and thoracic degenerative disc disease and spondylosis; mechanical low back pain syndrome; and fibromyalgia (20 CFR 404.1420(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) that is limited to occasional postural limitations, such as climbing, balancing, stooping, crouching, kneeling and crawling; occasional pushing and pulling with the arms; avoiding exposure to concentrated temperature extremes; and having a sit/stand option at will.

2

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 20, 1964 and was 42 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English. (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 24, 2005, the amended onset date, through December 31, 2006, the date last insured (20 CFR 404.1520(g)).

(Tr. 59-65.)

Plaintiff's request for review was denied by the Appeals Council on October 29, 2010 (Tr. 1-3), making the ALJ's decision the final decision of the Commissioner.

On December 2, 2010, Plaintiff filed this action to obtain judicial review of the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.) On March 3, 2011, Plaintiff filed a Motion for Judgment on the Record (Doc. No. 12), to which Defendant responded on April 4, 2011 (Doc. No 25). Plaintiff filed a Reply to Defendant's Response on April 13, 2011. (Doc. No. 15.) On July 28, 2011, Magistrate Judge Brown issued the Report recommending that the Commissioner's decision be affirmed and that Plaintiff's Motion be denied. (Doc. No. 16.) Plaintiff asserted three objections to the Magistrate Judge's findings on August 3, 2011, specifically:

3

1. Plaintiff objects to the Magistrate Judge's recommendation that substantial evidence supports the ALJ's evaluation of Plaintiff's mental disorders.

2. Plaintiff objects to the Magistrate Judge's recommendation that substantial evidence supports the weight the ALJ gave to the opinion of Plaintiff's physicians.

3. Plaintiff objects to the Magistrate Judge's recommendation that substantial evidence supports the ALJ's evaluation of Plaintiff's credibility.

(Doc. No. 27.) Defendant filed a Response to Plaintiff's objections on August 17, 2011 (Doc. No. 18). The Court discusses the merits of Plaintiff's objections below.

## II.    STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d

4

642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

Magistrate Judge Brown's Report explains that review of the ALJ's decision is limited to Plaintiff's medical records taken after September 24, 2005, the date of the previous ALJ decision denying Plaintiff's disability claim. (Doc. No. 16 at 12.) Administrative res judicata precludes review of issues and facts that were resolved by a previous decision of the Commissioner, and prior disability determinations preclude a finding of disability within a previously adjudicated period. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232 (6th Cir. 1993). Thus, Plaintiff must prove that her condition worsened to the point of becoming disabling after September 24, 2005.

    A. *Plaintiff objects to the Magistrate Judge's recommendation that substantial evidence supports the ALJ's evaluation of Plaintiff's mental impairment.*

When a claimant alleges a disabling mental impairment, an ALJ must first evaluate whether the claimant has a medically determinable mental impairment and then rate the degree of functional limitation resulting from the impairment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. Each listed mental impairment consists of paragraphs labeled A, B, and C describing

5

the impairment. The ALJ must evaluate the "A" criteria, consisting of the "symptoms, signs, and laboratory findings" of the claimant's alleged medically determinable mental impairment. *Id.* The ALJ must also evaluate the "B" criteria, which rate the claimant's degree of functional limitation and consist of four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* If the "B" criteria are not satisfied, the ALJ must assess the "C" criteria, which provide similar criteria for evaluating impairment-related functional limitations that are incompatible with the ability to do any gainful activity. *Id.* A claimant is deemed to have a listed mental impairment if his medical record satisfies the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B, or A and C. *Id.*

In denying Plaintiff's claim for benefits, the ALJ found that Plaintiff's mental impairments are non-severe. (Tr. 60.) The ALJ noted that although Plaintiff had been diagnosed with anxiety and major depressive disorder, Plaintiff was in the process of being weaned off of medication by November of 2009. (*Id.*) The ALJ also relied on a doctor's assessment that the Plaintiff had no limitation in activities of daily living, social functioning, and concentration, persistence or pace, and no episodes of decompensation. (*Id.*) Finally, the ALJ stated that the evidence in the record does not establish the presence of "C" criteria. (*Id.*)

As an initial matter, Magistrate Judge Brown considered records on Plaintiff's psychiatric treatment beginning in September of 2004, despite the prior ALJ decision in 2005, because it is unclear whether the prior ALJ decision considered those records. (*Id.*) This Court agrees that consideration of the earlier records is appropriate and will do the same. Magistrate Judge Brown's Report goes on to recommend a finding that substantial evidence supports the ALJ's determination on Plaintiff's mental limitations, noting that Plaintiff offered little evidence to the

6

contrary. (Doc. No. 16 at 16.) In addition to the evidence cited by the ALJ, Magistrate Judge Brown cites Plaintiff's GAF scores, Plaintiff's improvement on medication in 2005, Plaintiff's testimony that she is able to microwave meals and do some light household chores, and the fact that Plaintiff voluntarily stopped seeing a new provider. (*Id.* at 15-16.)

Plaintiff now objects that the record shows that her mental condition is a severe impairment that would seriously interfere with her ability to work. (Doc. No. 17 at 1-2.) Plaintiff argues that she has consistently had a GAF score of 45, which indicates serious symptoms of mental impairment. (*Id.* at 1.) Plaintiff also cites various medical notes in the record that describe the severity of her impairment. (*Id.* at 1-2.) Finally, Plaintiff states that she has been on two medications for her mental disorders on a consistent basis. (*Id.* at 2.) Defendant responds that Plaintiff's objection "merely reiterates her lay interpretation of the evidence" and does not acknowledge that much of the medical evidence predates the relevant period of time for the disability evaluation. (Doc. No. 18 at 1.)

Plaintiff's objection does not dispute any of the evidence relied on by the ALJ or Magistrate Judge Brown. The Court agrees with Magistrate Judge Brown that substantial evidence in the record supports the ALJ's determination that Plaintiff's mental impairments are not severe enough to meet the requirements of a medically determinable impairment. Specifically, substantial evidence supports the finding that Plaintiff's functional limitations are not severe.

The portions of Plaintiff's medical notes which she quotes in support of her objection consist of her own subjective complaints of her level of functioning, rather than the objective opinions and observations of the clinicians. (Tr. 305, 307, 320.) Further, Plaintiff's complaint on September 27, 2005 that she was "unable to do most ADLs or clean home" was due to her

7

back pain, not her mental conditions. (Tr. 307.) During the same time period, the clinicians consistently evaluated Plaintiff's depression and anxiety to be moderate, not severe. (Tr. 302-08.) They also consistently determined that her financial, family, and social relationship stressors were moderate or mild, and that her level of functioning was moderate. (*Id.*)

Further, Dr. Andrew Phay completed a psychiatric review of Plaintiff on November 24, 2007. (Tr. 272-85.) Dr. Phay determined that Plaintiff suffered from the medically determinable impairment of anxiety, but that the impairment was non-severe. (Tr. 272.) Dr. Phay also evaluated Plaintiff for the relevant B and C criteria, but found that she had no functional limitations according to either criteria. (Tr. 382-83.) Dr. Phay determined that Plaintiff was able to care for her own hygiene, cook meals, do some light cleaning, and buy groceries, and that she had "no significant conflicts" getting along with others. (Tr. 384.) Dr. Phay concluded that Plaintiff's limitations were related primarily to her physical problems. (*Id.*)

Plaintiff makes much of her low GAF score. A GAF score is a clinician's subjective determination of an individual's overall level of functioning. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). Although the Report notes that Plaintiff's scores were as high as 65 at some time, the Court finds no evidence in the record that Plaintiff had a current score higher than 45. A GAF of 41 to 50 means that a patient has serious symptoms or serious impairment in social, occupational, or school functioning. *Id.* However, A GAF score is not raw medical data, and it may have little or no bearing on social and occupational functioning. *Id.* at 13. There is no requirement that an ALJ consider GAF scores, and if other substantial evidence supports the conclusion that a claimant is not disabled, a court may not disturb the denial of benefits because of a low GAF score. *Id.* at 14. Additionally, as discussed above, the

8

same reports indicate that the clinicians found Plaintiff's level of functioning to be moderate. (Tr. 302-08.)

Substantial evidence exists in the record for the ALJ's determination that Plaintiff's mental conditions did not impair her level of functioning to a severe enough degree to interfere with her ability to do some work. At the least, there is no evidence that Plaintiff's mental impairments worsened since an ALJ denied her disability claim in September of 2005. The Court therefore adopts Magistrate Judge's recommendation that the ALJ properly evaluated Plaintiff's mental impairments.

> B. *Plaintiff objects to the Magistrate Judge's recommendation that substantial evidence supports the weight the ALJ gave to the opinion of Plaintiff's physicians.*

A "treating source" is one who has provided the claimant with medical treatment or evaluation and who has had an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902. Generally, the opinions of treating physicians are entitled to greater weight than the opinions of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). If the opinion of the treating physician as to the nature and severity of the claimant's conditions is supported by accepted clinical and laboratory diagnostic tests and is not inconsistent with other substantial evidence from the record, it will have controlling weight. *Rogers*, 378 F.3d at 242.

In determining the weight the accord a treating physician's opinion, the ALJ must consider "a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Id.* When discounting the opinion of the

9

treating physician, the ALJ must provide "good reasons" that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). The less consistent an opinion is with the record, the less weight it will be given. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). Deciding what weight to give to competing evidence, such as contradicting opinions by multiple treating physicians, is an administrative finding for which the final authority resides with the Commissioner. *See* 20 C.F.R. § 416.927(e); *Walker v. Sec'y Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992).

In denying Plaintiff's disability claim, the ALJ determined that Plaintiff has the capacity to perform sedentary work with some limitations. (Tr. 61.) Sedentary work is defined as:

> [L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The ALJ determined that Plaintiff can perform sedentary work with occasional postural limitations, occasional pushing and pulling with the arms, avoiding exposure to concentrated temperature extremes, and having a sit/stand option at will. (Tr. 61.)

The ALJ stated that he gave significant weight to the opinion of Dr. Hazlewood, Plaintiff's treating physiatrist, that Plaintiff has the ability to push, pull or lift greater than fifteen points and should avoid repetitive bending. (Tr. 63.) The ALJ also gave significant weight to the opinion of Dr. Keown, a consultative examiner, who opined that Plaintiff does not have any impairment-related limitations and that no evidence suggested a need for a restricted work environment, but only to the extent that Dr. Keown's opinion supports a finding that Plaintiff is

10

capable of sedentary work. (*Id.*) The ALJ also gave significant weight to the opinion of Plaintiff's former physiatrist, Dr. Moore, that Plaintiff needs the ability to sit at will and should avoid moderate exposure to extreme cold and high humidity. (*Id.*)

The ALJ gave little weight to the state-agency consultants' assessments, and to the opinion of Plaintiff's primary care physician, Dr. McKinney, because he is not a specialist. (Tr. 64.) Dr. McKinney completed a Medical Source Statement regarding Plaintiff's physical ability to do work-related activities on March 21, 2008. (Tr. 400-05.) Dr. McKinney opined that Plaintiff can occasionally lift and carry up to twenty pounds; can sit, stand, and walk for twenty to thirty minutes at a time each, or for two to three hours total in a work day; can occasionally or frequently perform activities using her hands, but never pushing or pulling; can climb stairs, ramps, ladders, or scaffolds; cannot stop, kneel, crouch, or crawl; can occasionally be subjected to environmental limitations; and can perform activities of daily living such as shipping, preparing meals, and caring for personal hygiene. (*Id.*) Dr. McKinney completed another Medical Source Statement in June of 2009 containing essentially the same evaluation, but with a less restrictive view of Plaintiff's ability to perform activities using her hands. (Tr. 516.)

Magistrate Judge Brown concludes in the Report that the ALJ properly treated Dr. McKinney's opinion because, although he treated Plaintiff for a range of medical problems, her severe impairments were treated by the other doctors. (Doc. No. 16 at 17-18.) The Report notes that a treating specialist's opinion is typically given more weight than non-specialists under 20 C.F.R. § 404.1527(d)(5). (*Id.* at 17.) Magistrate Judge Brown also recommends that the ALJ did not err in failing to adopt some of Dr. Moore's opinions because they are inconsistent with Dr. Moore's treatment notes. (*Id.* at 18.) Plaintiff objects that Dr. McKinney's and Dr. Moore's treatment notes are similar and not inconsistent with the record, and that Dr. McKinney

11

consistently treated Plaintiff for her chronic back pain and fibromyalgia. (Doc. No. 17 at 2.) Plaintiff also objects that although Dr. Moore's treatment notes indicate improvement in Plaintiff's pain, they do not indicate improvement in functioning. (*Id.*)

The Court does not find that Dr. McKinney's opinions as to Plaintiff's limitations are inconsistent with the ALJ's determination that Plaintiff can perform sedentary work with additional limitations. Therefore, the Court does not find that the disability determination would be different if the ALJ had explicitly accorded Dr. McKinney's opinions greater weight. For example, Dr. McKinney opined that Plaintiff can occasionally lift and carry up to 20 pounds, more than the requirements for sedentary work. Dr. McKinney also opined that Plaintiff could not sit, stand, or walk for more than twenty or thirty minutes at a time, and the ALJ modified the requirements for Plaintiff's ability to perform sedentary work to include an at-will sit/stand option. Dr. McKinney also determined that Plaintiff is capable of ambulating without assistance and can handle paper and files. Even if the ALJ were to have improperly discounted those opinions, a violation of the treating physician rule is harmless error if the Commissioner makes findings consistent with the physician's opinions. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The only apparent inconsistency between Dr. McKinney's opinion and the ALJ's determination is that Dr. McKinney felt Plaintiff could never engage in pushing or pulling. As to that specific finding, the ALJ relied on Dr. Hazlewood's opinion that Plaintiff could occasionally push or pull up to fifteen pounds. (Tr. 63.) As Magistrate Judge Brown noted, the opinion of a treating specialist about medical issues related to his specialty is generally accorded greater weight than the opinion of a non-specialist. 20 C.F.R. § 404.1527. The statute does not indicate,

12

as Plaintiff suggests, that Dr. McKinney's opinion must be given greater weight simply because he also treated Plaintiff's physical conditions. Further, the weight given to the competing opinions of multiple treating physicians is an administrative finding for which the final authority resides with the Commissioner. *See* 20 C.F.R. § 416.927(e); *Walker*, 980 F.2d at 1070.

Plaintiff has also objected to the ALJ's failure to adopt certain opinions of Dr. Moore. Specifically, Dr. Moore opined that Plaintiff would need to lie down twice per eight-hour work shift and that her impairments would cause her to be absent from work about four days per month. (Tr. 330-31.) Magistrate Judge Brown observed that around the same time as Dr. Moore completed his Medical Source Statement, his treatment notes indicate that Plaintiff's pain had improved and that Plaintiff deferred an epidural steroid injection as treatment. (Doc. No. 16 at 18.) The Report also notes that by September 13, 2006, Dr. Moore's treatment notes indicate a fifty to sixty percent improvement in controlling Plaintiff's pain and her overall quality of life. (*Id.*)

An ALJ may accept parts of a physician's opinion and reject other parts when such treatment is supported by the record. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391-92 (6th Cir. 2004). The Court finds that Dr. Moore's opinions which the ALJ did not adopt are not supported by the record. Dr. Moore completed an identical evaluation prior to Plaintiff's last disability determination, which the ALJ explicitly considered in that decision and then went on to find that Plaintiff could perform a significant range of light work. (Tr. 77-79.) The ALJ found Plaintiff not disabled at that time, and Dr. Moore's treatment notes do not indicate significant deterioration in Plaintiff's condition since that time. In fact, Dr. Moore's notes indicate that Plaintiff eventually had significant improvement with her pain and quality of life under his care. (Tr. 336, 340.) Accordingly, the Court agrees with Magistrate Judge Brown's

recommendation that the ALJ did not err in his consideration of the opinions of Plaintiff's physicians.

> C. *Plaintiff objects to the Magistrate Judge's recommendation that substantial evidence supports the ALJ's evaluation of Plaintiff's credibility.*

An ALJ's determination about a claimant's credibility is to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing the witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)). Nonetheless, an ALJ's credibility determination must be supported by substantial evidence. *Id.*

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her physical symptoms are not credible to the extent that they were inconsistent with his determination that she could perform sedentary work. (Tr. 62.) The ALJ noted that Plaintiff reported a fifty to sixty percent improvement in her pain control and quality of life in September of 2006, and that the same treatment record indicated that Plaintiff required frequent rest breaks only when performing activities exceeding light physical demand. (*Id.*) The ALJ also cited objective medical tests of her physical abilities over the course of several years that contradicted her reported limitations. (Tr. 62-63.) The ALJ observed Dr. Hazlewood's notes that Plaintiff was independent in all activities of daily living, that her medication improved her quality of life, and that Dr. Hazlewood declined to fill out a disability form for Plaintiff. (Tr. 62.) The ALJ further relied on Dr. Keown's report that Plaintiff did not give a reliable effort during her examination and had normal ambulation when she did not think she was being observed. (Tr. 63.) Finally, the ALJ noted several contradictions between Plaintiff's testimony and the medical record. (*Id.*)

Magistrate Judge Brown recommends a finding that substantial evidence supports the ALJ's evaluation of Plaintiff's credibility regarding her complaints of pain. (Doc. No. 16 at 19.) The Report relies on Dr. Keown's report that Plaintiff changed her ambulation when she knew she was being observed, the scarcity of objective evidence of Plaintiff's back pain and fibromyalgia in the record, Plaintiff's improvement on medication, and Dr. Hazlewood's report that he refused to support Plaintiff's disability claim. (*Id.*) Plaintiff now objects that Dr. Keown's implication that Plaintiff was faking her severe pain is insufficient to diminish her credibility, because Dr. Keown only briefly examined Plaintiff, and no other physicians have ever made such a suggestion. (Doc. No. 17 at 3.) Further, Plaintiff objects that relying on Dr. Hazlewood's refusal to fill out a disability form reads too much into this fact, as many doctors decline to become involved with disability claims. (*Id.*)

The Court notes that the records from Dr. Hazlewood's office do not merely say that he would not fill out a disability form for Plaintiff, but also that he "can't support disability." (Tr. 493.) This indicates to the Court that Dr. Hazlewood's refusal goes beyond a general aversion to assisting with disability claims. Further, Dr. Hazlewood had treated Plaintiff repeatedly for several months by the time he refused to support disability. (Tr. 492, 494, 498-501.) The Court therefore finds that the fact that Dr. Hazlewood declined to support Plaintiff's disability claim could reasonably contribute to substantial evidence supporting the ALJ's credibility determination.

Dr. Keown's reports of Plaintiff's unsatisfactory effort during her evaluation are also more involved than Plaintiff asserts. Dr. Keown did not simply state that Plaintiff was "faking" her pain, but rather that Plaintiff did not provide a reliable effort throughout the examination in order for Dr. Keown to thoroughly evaluate her limitations. (Tr. 560-61.) Dr. Keown noticed

that Plaintiff ambulated normally before the examination began, could lean forward to adjust articles of clothing around her ankles while seated on the exam table, and did not show difficulty using her hands to manipulate her clothing and belongings. (Tr. 561.) These observations were contradicted by Plaintiff's effort during the examination exercises. (*Id.*) Dr. Keown's notes are not insignificant to a credibility determination, despite the fact that it was Dr. Keown's only examination of Plaintiff.

As summarized above, the ALJ's credibility determination did not rest solely on the reports of Dr. Hazlewood and Dr. Keown, as Plaintiff asserts. Giving Plaintiff the benefit of the doubt as to Dr. Hazlewood's intentions, the other evidence cited by the ALJ in support of his determination constitutes substantial evidence to discredit Plaintiff's credibility. The ALJ did not entirely discount Plaintiff's subjective complaints, but rather only to the extent that the complaints contradict her ability to do sedentary work. The overall record certainly supports Plaintiff's ability to do such physically undemanding work, and the ALJ's assessment of Plaintiff's credibility is therefore supported by substantial evidence.

## IV. CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Report, **DENIES** Plaintiff's Motion, and **AFFIRMS** the decision of the Commissioner. This Order terminates this Court's jurisdiction over the above-styled action, and the case is **DISMISSED**.

It is so ORDERED.

Entered this the _9th_____ day of December, 2011.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT